ALBERTAZZI LAW FIRM
Anthony V. Albertazzi OSB #96003
300 SW Columbia Street Suite 203
Bend, OR 97702
Phone (541) 317-0231
a.albertazzi @albertazzilaw.com

Of Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| In Re: | ) | Case No. 15-33749-tmb11 |
| | ) | |
| JOHN CHARLES SANBORN, | ) | DISCLOSURE STATEMENT FOR PLAN |
| | ) | DATED NOVEMBER 23, 2015 |
| Debtor. | ) | |
| | ) | |
| | ) | |

**TABLE OF CONTENTS**

1
2     I.     INTRODUCTION ................................................................................................ 2
3            A.     Plan Summary .................................................................................... 4
4            B.     Purpose of This Document.................................................................. 4
5     II.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing........................ 5
6     III.   BACKGROUND ................................................................................................ 6
7            A.     Description and History of the Debtor................................................. 6
8            B.     Insiders of the Debtor........................................................................ 6
9            C.     Management of the Debtor Before Bankruptcy .................................... 7
10                  1.     Real Estate Owned Before Bankruptcy .................................... 7
11                  2.     Prepetition Financial Distress ................................................ 8
12           D.     Events Leading to Chapter 11 Filing ................................................. 9
13                  1.     Event immediately precipitating Bankruptcy ............................ 9
14    IV.    Significant Events During the Bankruptcy Case ........................................ 9
15           A.     Business Activities of Debtor ............................................................ 9
16           B.     Court Orders.................................................................................... 10
17           C.     Postpetition Activities of Debtor ...................................................... 11
18                  1.     Professionals ...................................................................... 11
19                  2.     Sale of Gravilla Property .................................................... 11
20           D.     Prospective Court Actions To Be Taken by Debtor .......................... 12
21                  1.     Projected Recovery of Avoidable Transfers .......................... 12
22                  2.     Claims Objections.............................................................. 12
23                  3.     Refinance or Sale of Residence .......................................... 13

| | | | | |
|---|---|---|---|---|
| V. | | Current and Historical Financial Conditions | ................................................ | 13 |
| | A. | Current Conditions | ................................................ | 13 |
| | B. | Historical Conditions | ................................................ | 13 |
| VI. | | SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS | ................................................ | 13 |
| | A. | What is the Purpose of the Plan of Reorganization? | ................................................ | 13 |
| | B. | Effective Date | ................................................ | 14 |
| | C. | Unclassified Claims | ................................................ | 14 |
| | | 1. Administrative Expenses | ................................................ | 14 |
| | D. | Classified Claims | ................................................ | 16 |
| | | 1. CLASSES OF CLAIMS AND THEIR TREATMENT | ................................................ | 16 |
| | | 2. Calculation of J2 Mill View Claim | ................................................ | 17 |
| | E. | Estimated Payments to General Unsecured Creditors | ................................................ | 18 |
| | F. | Classes of Equity Interest Holders | ................................................ | 18 |
| | G. | Means of Implementing the Plan | ................................................ | 19 |
| | H. | Executory Contracts and Unexpired Leases | ................................................ | 19 |
| VII. | | Other Important Considerations | ................................................ | 19 |
| | A. | Risk Factors | ................................................ | 19 |
| | B. | Tax Consequences of Plan | ................................................ | 20 |
| VIII. | | CONFIRMATION REQUIREMENTS AND PROCEDURES | ................................................ | 20 |
| | A. | Who May Vote or Object | ................................................ | 21 |
| | | 1. What Is an Allowed Claim or an Allowed Equity Interest? | ................................................ | 21 |
| | | 2. What Is an Impaired Claim or Impaired Equity Interest? | ................................................ | 22 |
| | B. | Who is Not Entitled to Vote | ................................................ | 22 |
| | C. | Who Can Vote in More Than One Class | ................................................ | 23 |
| | D. | Votes Necessary to Confirm the Plan | ................................................ | 23 |
| | | 1. Votes Necessary for a Class to Accept the Plan | ................................................ | 23 |
| | | 2. Treatment of Non-accepting Classes (Cramdown) | ................................................ | 24 |
| | E. | Liquidation Analysis | ................................................ | 25 |
| | F. | Feasibility | ................................................ | 25 |
| | | 1. Ability to Initially Fund Plan | ................................................ | 25 |
| | | 2. Ability to Make Future Plan Payments And Operate Without Further Reorganization | ................................................ | 26 |
| IX. | | EFFECT OF CONFIRMATION OF PLAN | ................................................ | 26 |
| | A. | Discharge | ................................................ | 26 |
| | B. | Modification of Plan | ................................................ | 27 |
| | C. | Final Decree | ................................................ | 27 |

## I.    INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the chapter 11 case of

John Charles Sanborn (referred to herein as "Debtor" or "Plan Proponent"). This Disclosure

Statement contains information about the Debtor and describes the Plan of Reorganization Dated

1    November 23, 2015 (the "Plan") filed by Debtor on November 23, 2015.   A full copy of the Plan

2    is attached to this Disclosure Statement as Exhibit A.

3           Attached to this Disclosure Statement are exhibits containing financial information that

4    may help you decide how to vote and whether to object to confirmation.  Exhibit B shows the

5    identity and value of material assets of Debtor. Exhibits C and D show prepetition financial

6    information and a summary of financial information since this case was filed. Exhibit E contains

7    an analysis of how much creditors would likely receive in a Chapter 7 liquidation.  Exhibit F

8    describes how much Debtor is required to pay on the Effective Date of the Plan. Exhibit G shows

9    Debtor's monthly income and expenses.

10           Whether the Plan is confirmed is subject to complex legal rules that cannot be fully

11    described here.  You are strongly encouraged to read the Plan carefully and to consult an

12    attorney to help you determine how to vote and whether to object to confirmation of the Plan.

13    If the Plan is confirmed, the payments promised in the Plan constitute new contractual

14    obligations that replace the Debtor's pre-confirmation debts.  Creditors may not seize their

15    collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations

16    under the Plan.  If Debtor defaults in performing Plan obligations, any creditor can file a motion

17    to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-

18    bankruptcy rights.  Debtor will be discharged from all pre-confirmation debts (with certain

19    exceptions) if Debtor makes all Plan payments.  Enforcement of the Plan, discharge of the

20    Debtor, and creditors' remedies if Debtor defaults are described in detail in the Plan.

21           *Your rights may be affected.  You should read the Plan and this Disclosure Statement*

22    *carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to*

23    *consult one*.

## A. Plan Summary

The Effective Date of the plan is 15 days after entry of the confirmation order.

The proposed distributions under the Plan are discussed in this Disclosure Statement under the section "Classes of Claims and Their Treatment" beginning on Page 16.

General unsecured creditors are classified in the *General Unsecured 1* class, and will receive distributions totaling approximately $ 379,604 which is 100% of unsecured creditors' allowed claims. General unsecured creditors will receive interest on their claims at the Federal Rate. As used in this Disclosure Statement and the Plan, "Federal Rate" means the rate specified in 28 U.S.C. § 1961(a), which is 0.31% per annum. Payment will be made $ 100,000 on the Effective Date and thereafter from available funds not later than 60 months following the Effective Date. Interest will accrue beginning August 3, 2015, the filing date of this case. Payments to general unsecured creditors will begin on the Effective Date.

Plan payments to secured creditors will continue for approximately 60 months; the last payment under the Plan is expected to be February 1, 2021.

For specifics on your claim, see the table on Page 18.

## B. Purpose of This Document

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case;
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim if the plan is confirmed);
- Who can vote on or object to the Plan;
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan;
- Why Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation; and
- The effect of confirmation of the Plan.

1 *Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement*

2 *describes the Plan, but it is the Plan itself that will, if confirmed, will establish your rights.*

3 **II.  DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN**
4 **CONFIRMATION HEARING**

5      The Court has not yet confirmed the Plan described in this Disclosure Statement. This

6 section describes the procedures pursuant to which the Plan will or will not be confirmed.

7 The hearing at which the Court will determine whether to confirm the Plan will take place on

8 [Date], in Courtroom #3, at the United States Bankruptcy Court 1001 SW 5th Avenue Suite 700,

9 Portland, OR 97204.

10      If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and

11 return the ballot in the enclosed envelope to Albertazzi Law Firm, 300 SW Columbia St. Suite

12 203, Bend, OR 97702. You may also fax your ballot to 541.385.3106, attention Sarah Schofield.

13 You may also email your ballot to s.schofield@albertazzilaw.com. Your ballot must be received

14 by [Ballot Deadline Date] or it will not be counted.

15      Objections to the confirmation of the Plan must be filed with the Court and served upon

16 Debtor and Debtor's attorney by [Deadline for filing objections].

17      If you want additional information about the Plan, you should contact Anthony V.

18 Albertazzi, Attorney for Debtor, 300 SW Columbia St. Suite 203, Bend, OR 97702.

19                                      **Disclaimer**

20      The Court has [conditionally] approved this Disclosure Statement as containing adequate

21 information to enable parties affected by the Plan to make an informed judgment about its terms.

22 The Court has not yet determined whether the Plan meets the legal requirements for

23 confirmation, and the fact that the Court has [conditionally] approved this Disclosure Statement

16823-13773:96520

1 does not constitute an endorsement of the Plan by the Court, or a recommendation that it be

2 accepted.

3 **III.   BACKGROUND**

4 **A.   Description and History of the Debtor**

5 Debtor is a real estate developer residing in Bend Oregon. He is not married and has no

6 children. Debtor's current income is from rents which he receives from commercial property

7 located at 8995 Crestmar Point in San Diego California (referred to as "Pet Cemetery" in this

8 Disclosure Statement). Debtor has no other significant sources of income.

9 **B.   Insiders of the Debtor**

10 The Insiders of Debtor, as defined in §101(31) of the United States Bankruptcy Code (the

11 "Code") are:

12 Anne S. Lane (mother)
13 Kristina Sanborn (sister)
14 David W. Slater (cousin)
15 San Diego Pet Memorial Park, Inc. (corporation owned by Debtor).
16
17 During this case, Debtor did not pay compensation to insiders. In the two years prior to

18 the commencement of Debtor's bankruptcy case (the period 8/4/13 – 8/3/15), Debtor did not

19 make payments to insiders except as shown below. Note that these payments were made by the

20 Pet Cemetery Business, not Debtor personally.

| Insider Name | Amount Paid in the Last Two Years |
|---|---|
| Anne S. Lane | $ 13,800.00 |

1    **C.    Management of the Debtor Before Bankruptcy**

2         **1.    Real Estate Owned Before Bankruptcy**

3         At the commencement of this case, Debtor owned three properties: his residence located

4    at 298 NW Linster Place, Bend, Oregon ("Residence"), commercial property located at 8995

5    Crestmar Pt, San Diego, California (the "Pet Cemetery"), and a residential property located at

6    230 Gravilla St, La Jolla, California ("Gravilla Property").

7                    *a)    Debtor's Residence*

8         Debtor's residence consists of four legal lots. One of the lots fronts on the Deschutes

9    River. This property is desirable because it is within immediate access to the Deschutes River

10   Trail which is a popular walking path in Bend. Prior to filing bankruptcy, Debtor went through

11   the steps to obtain four legal lots on this property. Accordingly, the property can be sold or

12   refinanced in whole or in part.

13                    *b)    The Pet Cemetery*

14        This is a commercial property located in California. It is owned 50% with Debtor's

15   mother Anne S. Lane. Ownership is as tenants in common. There is a pre-petition agreement

16   between Debtor and Ms. Lane for the division of rents from this commercial property providing

17   that $ 5,000 of the rents goes to Ms. Lane; and the remainder (approximately $ 8,000 per month)

18   goes to the Debtor. Most of the rent is paid to Debtor by the pet cemetery business (San Diego

19   Pet Memorial Park, Inc.) which is also owned by the Debtor. The Debtor has purchased the

20   shares of San Diego Pet Memorial Park, Inc. from Anne S. Lane prior to the commencement of

21   this case. He still owes her money from that transaction. Due to Debtor's prepetition default on

1   this agreement, Ms. Lane has the option to take back her shares. This is discussed further below

2   in the section titled "Executory Contracts."

3                           *c)*      ***The Gravilla Property***

4          This is a residential property near the ocean in La Jolla, California. During the course of

5   this case, this property was sold. The proceeds were used to pay secured creditors on the property

6   (including a tax lien owing to IRS). In addition, a portion of the proceeds was applied to the

7   mortgage loan which still exists on Debtor's residence. That mortgage loan is held by J2 Mill

8   View LLC.

9                    **2.**     **Prepetition Financial Distress**

10         Prior to filing bankruptcy, Debtor attempted to remodel the Gravilla property to increase

11  its value. Unfortunately, there were problems with unscrupulous contractors and a shortage of

12  cash to complete the remodel. Debtor availed himself of numerous of hard money, high interest

13  loans to solve this problem. In addition, he took a significant amount of money from San Diego

14  Pet Memorial Park, Inc. ("Pet Cemetery Business") to finish the Gravilla property. This caused

15  cash flow problems for the Pet Cemetery Business. Debtor guaranteed the Pet Cemetery's loan

16  of approximately $ 50,000 from Strategic Funding Source, Inc. This loan was secured by

17  accounts in receivable of the Pet Cemetery Business. Both Debtor and his mother Anne Lane are

18  personally liable on this loan. In addition, Debtor and his mother guaranteed a loan with Wells

19  Fargo Bank, NA Business Direct Division to finance operations of the Pet Cemetery Business.

20  This loan was taken out prior to Debtor's acquisition of the shares of the Pet Cemetery Business.

21  These loans created financial entanglement and strife between Debtor, the Pet Cemetery

22  Business, and Anne Lane.

1    Debtor took out a loan with J2 Mill View, LLC which was cross collateralized both on

2    the Residence as well as the Gravilla Property. This proved to be Debtor's undoing. J2 Mill View

3    foreclosed and sought to entangle the Gravilla Property, preventing its sale. This aggressive

4    strategy forced Debtor into bankruptcy.

5    **D.    Events Leading to Chapter 11 Filing**

6         **1.    Event immediately precipitating Bankruptcy**

7         The event which immediately precipitated the bankruptcy filing was the foreclosure of

8    the Residence by J2 Mill View LLC. Bankruptcy was filed the day prior to scheduled nonjudicial

9    foreclosure sale. The sale was completed by J2 Mill View without knowledge of the bankruptcy

10   filing with J2 Mill View being the purchaser. J2 Mill View intended to pursue its deficiency as a

11   result of the below market sale price on the Residence against the Gravilla Property. Debtor

12   attempted to negotiate with J2 Mill View for a sale of the Residence or extension of the

13   foreclosure date. J2 Mill View declined to negotiate, instead electing to both complete the

14   foreclosure and prevent the Gravilla Property from being sold. These aggressive tactics left

15   Debtor no choice but to file bankruptcy.

16        Debtor and J2 Mill View LLC agree that the sale is void because of the bankruptcy filing.

17   **IV.    SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE**

18   **A.    Business Activities of Debtor**

19        Although Debtor has been a real estate developer in the past, he is currently not engaging

20   in active real estate development, other than for the Residence. Debtor's income is from rents on

21   the Pet Cemetery Business. While this bankruptcy case has been pending, Debtor has

22   investigated and pursued obtaining a vacation rental designation for the Residence in the event

1 that income is needed to fund the Plan. In addition, Debtor has investigated investment

2 opportunities and approvals and permits required to develop the Residence into multiple

3 townhomes. Debtor has also conferred with the holder of the J2 Mill View mortgage, which

4 owns neighboring property to the Residence about a possible joint development or property

5 swap. However, these efforts were not successful. J2 Mill View has expressed a desire to be paid

6 its debt rather than to continue any business dealings with Debtor.

7   **B.**  **Court Orders**

8    On August 4, 2015, the Court issued an order designating John C. Sanborn as the person

9 to fulfill the duties of Debtor under §§ 343, 521 and other relevant sections of the Code (ECF 8).

10 The court order a scheduling and case management conference on August 6, 2015 (ECF 13). A

11 notice of meeting of Creditors was issued by the court on (August 4, 2015. It provided for a

12 deadline to file proofs of claim as December 17, 2015. On September 1, 2015, the court entered

13 an order allowing Debtor interim authority to use case collateral (ECF 30). On September 11,

14 2015, the court entered an order employing a real estate broker for the Debtor (ECF 24). On

15 September 23, 2015, the court entered an order authorizing the sale of the Gravilla property

16 (ECF 45). As noted above, the Gravilla Property was eventually sold. On October 1, 2015, the

17 court entered an order authorizing employment of Albertazzi Law Firm as attorney for Debtor.

18 Although Debtor had applied for final authority to use cash collateral, that motion was

19 withdrawn on the record October 26, 2015, because it was no longer necessary because creditors

20 having an interest in cash collateral were paid in full through the sale of the Gravilla property.

21 On September 24, 2015, the court set the deadline for filing of the Disclosure Statement of

22 December 1, 2015 (ECF 50). The court authorized employment of Capstone CPAs as

23 accountants for Debtor on November 14, 2015 (ECF 70). The court issued an order regarding

1     Debtor's objection to the claim of Lotta Construction Inc. on November 14, 2015(ECF 69).

2     There have been no other significant court orders in this case.

3     **C.**     **Postpetition Activities of Debtor**

4     **1.**     **Professionals**

5     The court has approved the following professionals in this case: Albertazzi Law Firm as

6 attorney for Debtor in possession, Eric Iantorno as real estate broker, and Capstone CPAs as

7 accountant and tax advisor.

8     **2.**     **Sale of Gravilla Property**

9     Pursuant to the court order authorizing sale, Debtor sold the Gravilla property on October

10 26, 2015 for $ 1.35 million. As a result of the sale, the following secured creditors were paid and

11 no longer have secured claims in this case: US Bank, Composite Designs, D.A. Realty, Charles

12 Brzezinski, Sr., and Internal Revenue Service. J2 Mill View was partially paid $ 481,554.50. The

13 following is the calculation of J2 Mill View's remaining secured claim:

| | |
|---|---|
| 14 Claim as of Petition Date: | $ 842,281.50 |
| 15 Amount Paid from Gravilla: | $ 481,554.50 |
| 16 Remaining claim not including postpetition interest: | $ 360,727.00 |

17 The following funds are being held in the DIP account pursuant to the order authorizing sale of

18 the Gravilla Property:

| | |
|---|---|
| 19 as claimed by Anne S. Lane: | $ 66,002.86 |
| 20 as claimed by Lotta Construction Inc. aka CBCS: | $ 32,134.81 |
| 21 Total: | $ 98,554.56 |

22     **3.**     **Sale of Michigan Apartments / Settlement with Debra Kyser**

23     Debtor and his ex-wife Debra Kyser own an 11.5% minority interest in Pines LLC, which

24 owns 300 apartment units in Michigan. Pines LLC is controlled by an unrelated third party. The

1  apartments were sold and closing is expected in November 2016. Debtor and Ms. Kyser also

2  have a note payable from the partnership. Per their divorce decree, each are to receive one-half of

3  the sale proceeds, and Ms. Kyser is to receive the principal on the note payable. Per postpetition

4  negotiations between Debtor and Ms. Kyser, principal on the note payable will go to Ms. Kyser

5  and interest on the note payable will go to Debtor. Accordingly, Debtor expects to receive

6  $ 38,373.50 in sale proceeds plus $ 56,663.92 in interest for a total of $ 95,037.42 as a result of

7  the sale of the apartments. These figures were taken from a proposed closing statement which

8  was circulated by the manager of Pines LLC.

9       **D.    Prospective Court Actions To Be Taken by Debtor**

10            **1.    Projected Recovery of Avoidable Transfers**

11            Debtor does not intend to pursue any fraudulent conveyance or other avoidance actions in

12  this case. Debtor has analyzed prepetition transaction with Anne Lane relating to the trust deed

13  which Debtor gave to Ms. Lane on the Gravilla Property. The amount of the trust deed was

14  $ 66,002.86; however, the actual amount of money that changed hands contemporaneous with

15  the exchange was $ 35,000. Due to other issues with Ms. Lane, including assumption of the

16  executory contract on the purchase of the Pet Cemetery Business, debtor has determined that it is

17  not financially prudent to avoid all or a portion of this transaction. Doing so could imperil

18  Debtor's shares in the Pet Cemetery Business and threaten his income from that business, which

19  is necessary to make the Plan work. In light of the fact that the Plan provides for payment in full

20  to all creditors, Debtor believes this decision is fair and equitable.

21            **2.    Claims Objections**

22            Except to the extent that a claim is already allowed pursuant to a final non-appealable

23  order, the Debtor reserves the right to object to claims.  Therefore, even if your claim is allowed

1  for voting purposes, you may not be entitled to a distribution if an objection to your claim is later

2  upheld.  The procedures for resolving disputed claims are set forth in the Plan.

3         **3.**      **Refinance or Sale of Residence**

4  Debtor plans to either sell or refinance all or a portion of the property constituting the

5  Residence to pay secured and unsecured creditors in this case.

6  **V.**      **CURRENT AND HISTORICAL FINANCIAL CONDITIONS**

7        **A.**      **Current Conditions**

8  Debtor's current financial condition is good. He is earning money from rents on the pet

9  cemetery. He has improved his income by adding RV rental spaces to the pet cemetery.

10        **B.**      **Historical Conditions**

11  Debtor has been real estate developer for the last several years. He has made successful

12  real estate purchases and developments. He is not actively developing real estate currently,

13  except for those activities relating to the Residence. As noted above, Debtor's historical financial

14  condition in the year prior to the commencement of this case was characterized by high assets,

15  low liquidity, and utilization of unfortunate hard money loans.

16  **VI.**      **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT**
17              **OF CLAIMS AND EQUITY INTERESTS**

18        **A.**      **What is the Purpose of the Plan of Reorganization?**

19  As required by the Code, the Plan places claims and equity interests in various classes

20  and describes the treatment each class will receive.  The Plan also states whether each class of

21  claims or equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will

22  be limited to the amount provided by the Plan.

1    **B.    Effective Date**

2         The Effective Date of the Plan is 15 days after the Court enters the order confirming the

3    Plan.

4    **C.    Unclassified Claims**

5         Certain types of claims are automatically entitled to specific treatment under the Code.

6    They are not considered impaired, and holders of such claims do not vote on the Plan.  They

7    may, however, object if, in their view, their treatment under the Plan does not comply with that

8    required by the Code.  All claims in this case are classified except for administrative claims and

9    the priority tax claims. The IRS has been paid from the sale of Gravilla, so a priority IRS tax

10   claim is not anticipated. California Franchise Tax Board has filed a priority claim in this case,

11   which is unclassified.

12   **1.    Administrative Expenses**

13        Administrative expenses are costs or expenses of administering the Debtor's chapter 11

14   case which are allowed under § 507(a)(2) of the Code.  Administrative expenses also include the

15   value of any goods sold to the Debtor in the ordinary course of business and received within 20

16   days before the date of the bankruptcy petition.  The Code requires that all administrative

17   expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a

18   different treatment.

19        The following table lists the Debtor's estimated administrative expenses and their

20   proposed treatment under the Plan:

| Type | Estimated Amount Owing when Plan is Confirmed | Proposed Treatment |
|------|------|------|
|      |      |      |

| Type | Estimated Amount Owing when Plan is Confirmed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $ 0.00 | N/A |
| Professional Fees, as approved by the Court: Albertazzi Law Firm | $ 50,000 | Fees to be paid $ 5,000 on the Effective Date, balance upon sale or refinance of Residence or upon receiving funds from legal actions. Debtor's attorney will have a lien on the Residence, junior to J2 Mill View, for fees. Fees will accrue interest at 6% beginning on the Effective Date. Payment of fees will be subject to application by attorney and approval by the court. This amount is subject to change based upon the extent of litigation involved in confirming the Plan. |
| Fees owing to Office of the U.S. Trustee | $ 6,500 | Any balance owing will be paid on or before the Effective Date of the Plan |
| Total | $ 61,500 | |

1    ***a)    Priority Tax Claims***

2          There is one priority tax claim in this case: California Franchise Tax Board, filed as

3    Claim No. 12 for $ 8,626.98. Debtor does not anticipate any other priority tax claims.

4    ***b)    Disputed Claims and Resolution***

5          Debtor has filed an objection to Claim No. 7 filed by Lotta Construction, Inc. d/b/a/

6    Charles Brzezinski Construction Service aka CBCS ("Brzezinski Claim"). Debtor believes that

7    Claim No. 3 filed by Todd A. Mikles duplicates Claim No. 5 filed by Sovereign Strategic

8    Mortgage Fund LLC. Debtor will try to resolve this with the claim holder. Debtor may file

9    additional claims objections. If claims are disputed, Debtor will file objections to claims as

10   appropriate.

1        Debtor listed amounts owing to Professional Credit Service as disputed on Schedule F.

2    Professional Credit Service has filed claims (Claim Nos. 9, 10 and 11), each of which are less

3    than $ 200. Because of the small amount and the expenses and fees required to litigate these

4    claims, Debtor has elected to pay these claims, which total $ 506.54.

5        Several creditors are listed as disputed on the Debtor's bankruptcy schedules. These

6    creditors' claims will be disallowed and not paid unless the creditor files a claim by the claims

7    bar date, which is December 17, 2015. These creditors are Account Resolution Services, Clear

8    Spring Loan Services, Inc., Enhanced Recovery Corporation, and City of San Diego.

9        Creditors who were already paid through the sale of the Gravilla Property will not be paid

10   any additional money through the Plan. These creditors are: Charles Brzezinski, Sr., U.S. Bank

11   National Association, D.A. Realty LLC, and Composite Designs Group, Inc. Debtor will

12   encourage these Creditors to withdraw their claims. If that is not successful, Debtor will object to

13   the claims.

14      **D.    Classified Claims**

15        **1.    Classes Of Claims And Their Treatment**

16        The following are the classes set forth in the Plan, and the proposed treatment that they

17   will receive under the Plan, along with whether the class is impaired:

| Class Name and Number | Creditor / Claim No. if filed | Summary of Treatment (see Plan for details) |
|---|---|---|
| *General Unsecured 1* | Miscellaneous (see list below) | Pay allowed claims in full with interest at the Federal Rate as follows: $ 100,000 on the Effective Date, balance not later than 60 months thereafter plus net proceeds from sale/refinance of Residence and from sale of other assets; IMPAIRED |

| Class Name and Number | Creditor / Claim No. if filed | Summary of Treatment (see Plan for details) |
|---|---|---|
| *Kyser Alimony 2* | Debra Kyser (fka Sanborn) | Pay allowed claim in full with interest at the Federal Rate on the Effective Date upon completion of the postpetition settlement agreement with Debra Kyser. IMPAIRED |
| *Anne Lane Secured 3* | Anne S. Lane | Pay proceeds of $ 66,002.86 from DIP account from sale of Gravilla Property on the Effective Date. IMPAIRED |
| *Deschutes Tax 4* | Deschutes County Tax Assessor | Pay allowed claim in full not later than 180 days after the Effective Date; rights of claim holder under state law are not affected. IMPAIRED |
| *J2 Mill View 5* | J2 Mill View LLC | Pay $ 380,542.36 with 6.25% interest as follows: monthly interest only payments of $1,981.99 commencing 3/1/2016 with balance due not later than 60 months after Effective Date or upon sale/refinance of the Residence. IMPAIRED |
| *Strategic Funding 6* | Strategic Funding Source, Inc. | Pay per prepetition agreement. UNIMPAIRED |
| *Convenience Class 7* | Professional Credit Service | This class consists of claims of less than $ 200; Pay in full with interest on the Effective Date. UNIMPAIRED |
| *Lundgren Secured 8* | Shane Lundgren | Make interest only payments on secured claim of $ 47,289.60 until collateral is sold. Payments are $ 236.45 per month. IMPAIRED |
| *Disputed 9* | Todd A. Mikles, Lotta Construction Inc. aka CBCS | Pay allowed claims in full with interest at the Federal Rate. IMPAIRED |
| *Wells Fargo 10* | Wells Fargo Bank NA Business Direct Division | Pay per prepetition agreement. UNIMPAIRED |

1          **2.      Calculation of J2 Mill View Claim**

2          The J2 Mill View Claim is calculated as follows. The calculations are based on a

3     postpetition interest rate of 6.25% as proposed by the Plan.

| Claim Amount as of commencement date | $ 842,281.50 |
|---|---|
| Amount paid from Gravilla Sale | ($ 481,554.50) |

| | |
|---|---|
| Remaining unpaid principal after Gravilla Sale | *$ 360,727.00* |
| Interest accrual from commencement date to partial payoff date (83 days times $ 144.23 per day) | $ 11,970.78 |
| Interest accrual from partial payoff date to 3/1/16, the date the first payment is due (127 days times $ 61.77 per day) | $ 7,844.58 |
| Total postpetition interest to be capitalized into the unpaid principal amount owing on the claim (sum of postpetition interest accrual) | *$ 19,815.36* |
| New Unpaid Principal to be paid through Plan (sum of *italicized* numbers above) | **$ 380,542.36** |

1    **E.    Estimated Payments to General Unsecured Creditors**

2        Debtor's estimate of amounts to be paid to holders of general unsecured claims are set

3    forth below. These are subject to change if claims objections are filed.

| Claim Holder | Estimated Claim Amount and Dividend Amount |
|---|---|
| Anne S. Lane | 43,300.14 |
| California Franchise Tax Board | 2148.54 |
| Cathy Cass | 50,000.00 |
| David W. Slater | 35,000.00 |
| Garrett Goodwin | 6,000.00 |
| Genetos Retons & Yoon LLP | 7,134.00 |
| Johnson Mark LLC | 301.00 |
| Kristina Sanborn | 32,000.00 |
| Lance Parr | 10,000.00 |
| Mike Gruszecki | 4,000.00 |
| Patrick Doyle | 25,000.00 |
| Shane C. Lundgren | 42,500.00 |
| Stewart Brothers Construction | 2,000.00 |
| Sovereign Strategic Mortgage Fund LLC (aka Todd Mikels) | 59,706.35 |
| Tony Hughes | 10,000.00 |

4    **F.    Classes of Equity Interest Holders**

5        This is an individual case. There are no equity interest holders. The Plan provides that

6    Property of the bankruptcy estate will vest in Debtor upon confirmation of the Plan.

1        **G.      Means of Implementing the Plan**

2            The Debtor will implement the Plan by earning income and using those earnings to fund

3    the Plan. In addition, Debtor will use proceeds from the sale of assets (Michigan apartments

4    partnership) to fund the plan. Debtor anticipates selling or refinancing all or part of the property

5    constituting the Residence to pay creditors. Prior to doing this, Debtor plans to obtain approvals

6    necessary for permitting to enhance the value of the Residence.

7            After the Plan is confirmed, Debtor intends to pursue claims against Charles Brzezinski,

8    Jr. and his affiliated companies, Phoenix Pharms and related entities, Phil Roxbury (prior

9    contractor for Gravilla Property), and personal injury claim (July 2014 auto accident). Net

10   proceeds from these actions will be used to pay creditors holding claims in the *General

11   Unsecured 1* class when those proceeds are received.

12       **H.      Executory Contracts and Unexpired Leases**

13           Debtor will assume the executory contract with Anne S. Lane relating to the purchase by

14   Debtor of shares of San Diego Pet Memorial Park, Inc. Debtor will cure the prepetition default

15   by paying $ 65,000 with interest at 6% interest amortized over 24 months. The first payment will

16   be due March 1, 2015. Ms. Lane will retain her collateral in the shares of the Pet Cemetery

17   Business. To Debtor's knowledge, there are no other executory contracts or unexpired leases. If

18   any exist, they are deemed rejected. Any rejection claims which are allowed would be part of the

19   General Unsecured 1 class.

20   **VII.   OTHER IMPORTANT CONSIDERATIONS**

21       **A.      Risk Factors**

22           The proposed Plan has inherent and risks which are described as follows. Funding of the

23   Plan is entirely dependent upon Debtor's continued rental income Debtor and sale or refinance of

24   the Residence. Business downturns and decline in real estate values could affect the feasibility of

1  the Plan. Debtor's death or serious disability would also affect his ability to coordinate

2  transactions needed to complete the Plan.

3  **B.**    **Tax Consequences of Plan**

4  *Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their*

5  *Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.*

6  Debtor does not anticipate significant tax consequences of the Plan because Debtor has

7  significant loss carry forward credits. In addition, Debtor is claiming the capital gains tax

8  exclusion on the Gravilla Property because he resided there for the appropriate period in the last

9  five years.

10  General tax consequences on creditors of any discharge, and the general tax

11  consequences of receipt of plan consideration after confirmation are unknown but are believed to

12  be insignificant. *This is Debtor's opinion only, creditors should consult with tax advisors*

13  *regarding particulars of each creditor's situation.*

14  **VIII.  CONFIRMATION REQUIREMENTS AND PROCEDURES**

15  To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the

16  Code.  These include the requirements that:  the Plan must be proposed in good faith; at least one

17  impaired class of claims must accept the plan, without counting votes of insiders; the Plan must

18  distribute to each creditor and equity interest holder at least as much as the creditor or equity

19  interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest

20  holder votes to accept the Plan; and the Plan must be feasible.  These requirements are <u>not</u> the

21  only requirements listed in § 1129, and they are not the only requirements for confirmation.

1    **A.    Who May Vote or Object**

2        Any party in interest may object to the confirmation of the Plan if the party believes that

3    the requirements for confirmation are not met. Many parties in interest, however, are not entitled

4    to vote to accept or reject the Plan.  A creditor or equity interest holder has a right to vote for or

5    against the Plan only if that creditor or equity interest holder has a claim or equity interest that is

6    both (1) allowed or allowed for voting purposes and (2) impaired. In this case, the Debtor

7    believes that the classes following  are impaired and that holders of claims in each of these

8    classes are therefore entitled to vote to accept or reject the Plan (classes where the only creditor

9    is an insider are excluded): *General Unsecured 1, Kyser Alimony 2, Deschutes Tax 4, J2 Mill*

10   *View 5,* and *Lundgren Secured 8*.  Debtor believes that the following classes are not impaired and

11   that holders of claims in each of these classes are not entitled to vote to accept or reject the Plan:

12   *Strategic Funding 6, Convenience Class 7, Wells Fargo 10*. Debtor believes that the *Anne Lane*

13   *Secured 3* class is not entitled to vote because the holder of the only claim is an insider. There are

14   no equity interests in this case; voting by equity interests is inapplicable to this case.

15       **1.    What Is an Allowed Claim or an Allowed Equity Interest?**

16       Only a creditor or equity interest holder with an allowed claim or an allowed equity

17   interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either

18   (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been

19   scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim

20   or equity interest, unless an objection has been filed to such proof of claim or equity interest.

21   When a claim or equity interest is not allowed, the creditor or equity interest holder holding the

22   claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules

1  the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a)

2  of the Federal Rules of Bankruptcy Procedure.

3        *a)      Deadline for Filing a Proof of Claim*

4        The deadline for filing proofs of claim in this case has been established by the court as

5  December 17, 2015.

6        *b)      Deadline for Objecting to Claims*

7        The deadline for filing objections to claims will be 30 days after the Effective Date of the

8  Plan.

9        *c)      Deadline for § 1111(b) Election*

10       Creditors with an allowed secured claim can make a timely election under § 1111(b) of

11  the Code no later than 14 days before the first date set for the hearing on confirmation of the

12  Plan.

13          **2.      What Is an Impaired Claim or Impaired Equity Interest?**

14       As noted above, the holder of an allowed claim or equity interest has the right to vote

15  only if it is in a class that is *impaired* under the Plan.  As provided in § 1124 of the Code, a class

16  is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members

17  of that class. There are no equity interests in this case; impairment as to equity interests is

18  inapplicable in this case.

19  **B.      Who is Not Entitled to Vote**

20       The holders of the following five types of claims and equity interests are *not* entitled to

21  vote: holders of claims and equity interests that have been disallowed by an order of the Court;

22  holders of other claims or equity interests that are not "allowed claims" or "allowed equity

23  interests" (as discussed above), unless they have been "allowed" for voting purposes; holders of

1  claims or equity interests in unimpaired classes; holders of claims entitled to priority pursuant to

2  §§ 507(a)(2), (a)(3), and (a)(8) of the Code; holders of claims or equity interests in classes that

3  do not receive or retain any value under the Plan; and administrative expenses. Debtor believes

4  that holders of claims in the following classes are not entitled to vote: *Strategic Funding 6, Wells*

5  *Fargo 10*, and *Disputed 9* to the extent that claims are not allowed in that class.

6      Even if you are not entitled to vote on the plan, you have a right to object to the

7  confirmation of the plan and to the adequacy of the disclosure statement.

8  **C.   Who Can Vote in More Than One Class**

9      A creditor whose claim has been allowed in part as a secured claim and in part as an

10  unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a

11  Plan in each capacity, and should cast one ballot for each claim.

12  **D.   Votes Necessary to Confirm the Plan**

13      If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one

14  impaired class of creditors has accepted the Plan without counting the votes of any insiders

15  within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is

16  eligible to be confirmed by "cramdown" on non-accepting classes, as discussed below.

17      **1.   Votes Necessary for a Class to Accept the Plan**

18      A class of claims accepts the Plan if both of the following occur: (1) the holders of more

19  than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the

20  Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the

21  class, who vote, cast their votes to accept the Plan. A class of equity interests accepts the Plan if

22  the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who

1     vote, cast their votes to accept the Plan. There are no allowed equity interests in this Plan;

2     provisions regarding acceptance of the Plan by equity interests are inapplicable to this case.

3     **2.     Treatment of Non-accepting Classes (Cramdown)**

4     Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm

5     the Plan if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the

6     Code. A plan that binds non-accepting classes is commonly referred to as a "cramdown" plan.

7     The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets

8     all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8)

9     of the Code, does not discriminate unfairly, and is fair and equitable toward each impaired class

10     that has not voted to accept the Plan. You should consult your own attorney if a cram down

11     confirmation will affect your claim or equity interest, as the variations on this general rule are

12     numerous and complex.

13     *a)     Absolute Priority Rule*

14     Debtor believes that the absolute priority rule does not apply to individual Chapter 11

15     debtors after the 2005 amendment of the Code.

16     *b)     Projected Disposable Income*

17     Section 1115 of the Code provides that debtor's postpetition earnings are property of the

18     bankruptcy estate. This applies until the case is closed, dismissed, or converted to a case under

19     chapter 7, 12, or 13, whichever is earlier. Pursuant to § 1129(a)(15)(B), if the holder of an

20     allowed unsecured claim objects, the court cannot confirm the Plan unless the value of the

21     property to be distributed under the plan is less than the Debtor's projected disposable income to

22     be received during the period for which the Plan provides payments beginning on the date the

1    first payment is due under the Plan. In this case, creditors will be paid in full. Accordingly,

2    Debtor believes that § 1129(a)(15) is not applicable in this case.

3    **E.    Liquidation Analysis**

4    To confirm the Plan, the Court must find that all creditors and equity interest holders (not

5    applicable in this case) who do not accept the Plan will receive at least as much under the Plan as

6    such claim and equity interest holders would receive in a chapter 7 liquidation.  A liquidation

7    analysis is attached to this Disclosure Statement as Exhibit E, which shows that, if a chapter 7

8    liquidation occurred, creditors would receive payment in full on their claims.

9    **F.    Feasibility**

10    The Court must find that confirmation of the Plan is not likely to be followed by the

11    liquidation, or the need for further financial reorganization, of the Debtor or any successor to the

12    Debtor, unless such liquidation or reorganization is proposed in the Plan. Debtor believes that the

13    Plan is feasible because Debtor has regular income from rents which is being used to make

14    payments under the Plan. Also, there is significant equity in the Residence which can be used to

15    pay creditors. The prepetition appraisal done by Skyline Appraisal values the Residence at

16    $ 1,542,000. Debtor's house is situated on two of the lots. The other two lots which are not being

17    used by Debtor were individually appraised at $ 360,000 and $ 350,000. Debtor has applied to

18    the court to have a broker appointed to sell those lots, and believes that a sale can be obtained in

19    an amount necessary to pay off all creditors.

20    **1.    Ability to Initially Fund Plan**

21    Debtor believes that he will have enough cash on hand on the effective date of the Plan to

22    pay all the claims and expenses that are entitled to be paid on that date.  Tables showing the

1 amount of cash on hand on the effective date of the Plan, and the sources of that cash are

2 attached to this disclosure statement as **Exhibit F**.

3     **2.**     **Ability to Make Future Plan Payments And Operate Without Further**
4     **Reorganization**

5     Debtor projects that he will have enough cash over the life of the Plan to make the

6 required Plan payments. Debtor's projected financial information is shown on **Exhibit G**. The

7 Debtor's financial projections show that the Debtor will have an aggregate annual average cash

8 flow, after paying operating expenses and post-confirmation taxes, of at least $ 96,000 from Pet

9 Cemetery rents.  The final Plan payment is expected to be paid on or before February 1, 2021.

10 The Plan contains default provisions to protect claims holders in the event of default by Debtor.

11     *You should consult with your accountant or other financial advisor if you have any*

12 *questions pertaining to these projections. The financial statements are believed to be accurate*

13 *and are proposed in good faith by Debtor. However, they have not been audited and Debtor is*

14 *not making guarantees of future financial performance or results.*

15 **IX.**     **EFFECT OF CONFIRMATION OF PLAN**

16     **A.**     **Discharge**

17     When the court grants Debtor a discharge, the Debtor shall be discharged from any debt

18 that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the

19 extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of

20 any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint

21 was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii)

22 of a kind specified in § 1141(d)(6)(B).  After the effective date of the Plan your claims against

23 the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding

24 sentence.

1          *a)*     ***Time of Discharge***

2          Confirmation of the Plan does not discharge any debt provided for in the Plan until the

3   court grants a discharge on completion of all payments under the Plan, or as otherwise provided

4   in § 1141(d)(5) of the Code. Debtor will request discharge when all payments have been made to

5   the *General Unsecured 1* class, or at a time when holders of claims in the *General Unsecured 1*

6   class have accepted alternative arrangements for payment, such as through a promissory note.

7   This may be prior to the time that all payments are completed under the Plan. Discharge is

8   subject to approval by the Court, with advance notice to creditors.

9          **B.     Modification of Plan**

10         The Plan Proponent may modify the Plan at any time before confirmation of the Plan.

11  However, the Court may require a new disclosure statement and/or re-voting on the Plan. The

12  Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the

13  Plan has not been substantially consummated *and* (2) the Court authorizes the proposed

14  modifications after notice and a hearing.

15         **C.     Final Decree**

16         Once the estate has been fully administered, as provided in Rule 3022 of the Federal

17  Rules of Bankruptcy Procedure, Debtor, or such other party as the Court shall designate in the

18  Plan Confirmation Order, will file a motion with the Court to obtain a final decree to close the

19  case.  Alternatively, the Court may enter such a final decree on its own motion.


/s/ John Charles Sanborn                          11/23/2015
Debtor/Plan Proponent                             Date

Submitted By:

ALBERTAZZI LAW FIRM

/s/ Anthony V. Albertazzi                         11/23/2015

Anthony V. Albertazzi, OSB 96003                    Date
Attorney for Debtor


# EXHIBITS

Exhibit A     Copy of Proposed Plan of Reorganization
Exhibit B     Identity and Value of Material Assets of Debtor
Exhibit C     Prepetition Financial Statement
Exhibit D     Summary of Postpetition Operating Reports
Exhibit E     Liquidation Analysis
Exhibit F     Ability to Fund Plan
Exhibit G     Projections of Cash Flow and Earnings for Post-Confirmation Period

ALBERTAZZI LAW FIRM
Anthony V. Albertazzi OSB #96003
300 SW Columbia Street Suite 203
Bend, OR 97702
Phone  (541) 317-0231
a.albertazzi @albertazzilaw.com

Of Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| In Re: | ) | Case No. 15-33749-tmb11 |
| | ) | |
| JOHN CHARLES SANBORN | ) | DEBTOR'S PLAN OF REORGANIZATION |
| | ) | DATED NOVEMBER 23, 2015 |
| Debtor. | ) | |
| | ) | |
| | ) | |

## I.    SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") is proposed by John Charles Sanborn (referred to as "Debtor" in this Plan). Debtor proposes to pay his creditors from earnings, pursuit of legal actions, and from the sale or refinance of Debtor's real estate. This Plan provides for four classes of secured claims and six classes of unsecured claims. This is an individual Chapter 11 case; there are no equity interests. Unsecured creditors holding allowed claims will be paid in full with interest. On the Effective Date, Debtor will pay $ 100,000 to be distributed pro-rata. The balance will be paid not later than sixty months after the Effective Date. If Debtor sells property, net proceeds after payment of administrative claims and secured claims will be remitted to unsecured creditors. Likewise, if Debtor obtains money from legal actions, net proceeds after payment of administrative claims and costs of litigation will be paid to unsecured creditors.

1   This Plan also provides for the payment of administrative and priority claims.

2   All creditors should refer to this Plan for information regarding the precise treatment of

3 their claim.  A disclosure statement that provides further information regarding this Plan and the

4 rights of creditors and equity security holders has been circulated with this Plan.  *Your rights*

5 *may be affected.  You should read these papers carefully and discuss them with your attorney, if*

6 *you have one. (If you do not have an attorney, you may wish to consult one.)*

7   **A.**  **Definitions**

8   1.  Unless otherwise indicated, statutory references are to Title 11 of the United

9 States Code. The "**Code**" means the Bankruptcy Code, Title 11 of the United States Code.

10   2.  Unless otherwise indicated, references to the "**Court**" mean the Bankruptcy

11 Court, District of Oregon.

12   3.  The "**Residence**" means the property located at 298 NW Linster Place, Bend

13 Oregon consisting of four lots and structures on the lots.

14   4.  The "**Federal Rate**" means the interest rate specified by 28 U.S.C. §1961(a),

15 which is 0.31% per annum.

16   5.  "**J2 Mill View**" means J2 Mill View, LLC an Oregon limited liability company.

17   6.  "**Pet Cemetery Business**" means San Diego Pet Memorial Park, Inc. a California

18 corporation.

19   7.  "**Michigan Apartments**" means Pines, LLC and related entities owning

20 apartments in Michigan.

21   8.  "**Metolius Project**" means Metolius LLC, Dutch Pacific Resources LLC and

22 related entities managed by Shane Lundgren.

23   9.  "**Gravilla Property**" means 230 Gravilla St, La Jolla, California.

Page 2 of 14  DEBTOR'S PLAN OF REORGANIZATION DATED   **EXHIBIT A**
       NOVEMBER 23, 2015

16823-13773:96530

Case 15-33749-tmb11  Doc 75  Filed 11/23/15

1    10.    As used in the plan, the phrase "**with interest**" as it relates to payment of claims

2  by debtor means that interest will be paid on the claim at the Federal Rate. Interest will accrue on

3  any unpaid balance beginning on August 3, 2015 and will continue until the claim is paid in full.

4    11.    The "**Effective Date**" means the effective date of the Plan, which is 15 days after

5  the court enters the order confirming the Plan.

6  **II.    CLASSIFICATION OF CLAIMS AND INTERESTS**

7    **A.    Claims**

8    There are ten classes of claims. Each class of claims along with a list of creditors in that

9  class is shown below. If the creditor has filed a claim in this case, the claim number is also

10  shown. Where applicable, identifying account information is also shown.

| Class Name and Number | Creditor / Claim No. if filed | Description of Class |
|---|---|---|
| *General Unsecured 1* | Anne S. Lane, California Franchise Tax Board (nonpriority portion of Claim No. 12), Cathy Cass, David W. Slater, Garrett Goodwin, Genetos Retons & Yoon LLP, Johnson Mark LLC, Kristina Sanborn, Lance Parr, Mike Gruszecki, Patrick Doyle, Shane C. Lundgren, Stewart Brothers Construction, Todd A. Mikles - Sovereign Strategic Mortgage Fund LLC Claim No. 5, Tony Hughes | General Unsecured Claims |
| *Kyser Alimony 2* | Debra Kyser (fka Sanborn), Claim No. 8 | Claim for alimony resulting from divorce from Debtor |
| *Anne Lane Secured 3* | Anne S. Lane | Claim relating to trust deed on Gravilla Property |
| *Deschutes Tax 4* | Deschutes County Tax Assessor | Property tax claim on the Residence |
| *J2 Mill View 5* | J2 Mill View LLC, Claim No. 4 | Secured claim of J2 Mill View on the Residence |

DEBTOR'S PLAN OF REORGANIZATION DATED NOVEMBER 23, 2015    **EXHIBIT A**

Case 15-33749-tmb11    Doc 75    Filed 11/23/15

| Class Name and Number | Creditor / Claim No. if filed | Description of Class |
|---|---|---|
| *Strategic Funding 6* | Strategic Funding Source, Inc. | Claim arising from loan made to Pet Cemetery Business |
| *Convenience Class 7* | Professional Credit Service, <u>Claim Nos. 8, 9, 10</u> | Claims of less than $ 200 |
| *Lundgren Secured 8* | Shane Lundgren, <u>Claim No. 13</u> | Secured claim relating to Metolius Project |
| *Disputed 9* | Todd A. Mikles , <u>Claim No. 3</u>, Lotta Construction Inc. aka CBCS, <u>Claim No. 7</u> | Disputed claims of Todd A. Mikles (duplicate claim); and Lotta Construction Inc. aka CBCS (Charles Brzezinski, Jr. for work done on Gravilla Property |
| *Wells Fargo 10* | Wells Fargo Bank NA Business Direct Division, <u>Claim No. 2</u> | Loan to the Pet Cemetery Business guaranteed by Debtor and Anne Lane |

III.    **TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS**

A.    **Unclassified Claims.**

Under section §1123(a)(1), administrative expense claims and priority tax claims are not in classes. In this case, there will be administrative expense claims for Debtor's attorney and other professionals. Fees to Debtor's attorney will be paid $ 5,000 on the Effective Date, and balance upon sale or refinance of the Residence or upon receiving funds from legal actions. Debtor's attorney will have a lien for unpaid fees on the Residence, junior to J2 Mill View. Fees will accrue interest at 6% beginning on the Effective Date. Payment of fees will be subject to application by attorney and approval by the court.

There is a priority tax claim filed by California Franchise Tax Board (Claim No. 12).

Claims held by Debtor's professionals are not classified.

DEBTOR'S PLAN OF REORGANIZATION DATED NOVEMBER 23, 2015    **EXHIBIT A**

1         **B.**     **Administrative Expense Claims.**

2         Each holder of an administrative expense claim allowed under § 503 of the Code will be

3 paid in full on the Effective Date in cash, or upon such other terms as may be agreed upon by the

4 holder of the claim and the Debtor. Administrative expense claims will be paid in cash on the

5 Effective Date or sooner if allowed by the court. Payment of attorney fees will be subject to

6 application by attorney and approval by the court.

7         **C.**     **Priority Tax Claims.**

8         All allowed priority tax claims will be paid in with interest as allowed in full not later

9 than 5 years after the Effective Date of the Plan.

10         **D.**     **United States Trustee Fees.**

11         All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and

12 be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.

13 Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the

14 Effective Date.

15         **E.**     **Post-Confirmation United States Trustee Fees.**

16         Following confirmation, Debtor must continue to pay quarterly fees to the United States

17 Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as Debtor

18 is required to make these payments, Debtor must file with the Bankruptcy Court quarterly reports

19 in the form specified by the United States Trustee for that purpose.

20 **IV.**     **TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

21         **A.**     **Treatment of Claims**

22         Claims and interests shall be treated as follows under this Plan. Classed of claims are

23 impaired where indicated below.

    DEBTOR'S PLAN OF REORGANIZATION DATED NOVEMBER 23, 2015     **EXHIBIT A**

1                  *1.*       *General Unsecured 1 Class Treatment*

2        This class is impaired. Debtor will pay 100% of allowed claims with interest as follows:

3 $ 100,000 on the Effective Date distributed pro-rata to holders of allowed claims; and the

4 remainder not later than 60 months after the Effective Date. Pro-rata means the entire amount of

5 the fund divided by the entire amount owed to creditors with allowed claims in this class. If

6 Debtor sells real property, Debtor will pay from the net proceeds of the sale, after payment of

7 administrative claims and claims of secured creditors, to holders of claims in this class. If Debtor

8 recovers money from legal actions, Debtor will pay the net proceeds of recovery, after payment

9 of legal fees and administrative claims, to holders of claims in this class.

10        Creditors in this class may not take any collection action against Debtor so long as

11 Debtor is not in material default under the Plan.

12                  *2.*       *Kyser Alimony 2 Class Treatment*

13        This class is impaired. Debtor will pay the Debra Kyser $ 10,000 upon completion of

14 documentation relating to the Metolius Project and confirmation that this is done by Shane

15 Lundgren as further detailed below. The sale proceeds from the Michigan Apartments will be

16 divided equally. The principal portion note payable by the partnership to Ms. Kyser will be

17 distributed to Ms. Kyser. The interest on the note payable by the Michigan Apartment will be

18 distributed to Debtor. Debtor will ensure that Ms. Kyser's interest in the Metolius Project is

19 appropriately documented to reflect Ms. Kyser's interest as stated in the divorce decree. Ms.

20 Kyser will have a 50% interest in Debtor's Discovery Carbon shares. A notation will be made on

21 the shares regarding this interest and a copy of the shares will be provided to Ms. Kyser. Debtor

22 will notify the issuer of the shares regarding Ms. Kyser's interest in the shares. Once this is all

23 done, Debtor will pay Ms. Kyser $ 10,000.

    DEBTOR'S PLAN OF REORGANIZATION DATED NOVEMBER 23, 2015     **EXHIBIT A**

Case 15-33749-tmb11    Doc 75    Filed 11/23/15

1          *3.*     *Anne Lane Secured 3 Class Treatment*

2      This class is impaired. Debtor will pay $ 66,002.86 with interest on the Effective Date.

3          *4.*     *Deschutes Tax 4 Class Treatment*

4      This class is impaired. Debtor will pay this claim in full with interest owing under

5 Oregon Law (<u>not</u> the Federal Rate) not later than 180 days from the Effective Date of the Plan.

6 The Plan shall not be construed to alter any of the Deschutes County Tax Assessor's legal rights

7 relative to property taxes owed and to the property which secures the tax obligation.

8          *5.*     *J2 Mill View 5 Class Treatment*

9      This class is impaired. Debtor will pay $ 380,542.36 with 6.25% interest per annum as

10 follows: monthly interest only payments of $ 1,981.99 commencing March 1, 2016 with balance

11 due not later than 60 months after Effective Date or upon sale/refinance of the Residence.

12 Interest accrues beginning March 1, 2016. The claim holder shall retain its interest in the

13 collateral (the Residence) until paid in full.

14          *6.*     *Strategic Funding 6 Class Treatment*

15      This class is unimpaired. Debtor will cause the Pet Cemetery business to pay this claim as

16 per the prepetition agreement. The claim holder's rights are not altered by the Plan.

17          *7.*     *Convenience Class 7 Class Treatment*

18      This class is unimpaired. Debtor will pay allowed claims in full with interest on the

19 Effective Date.

20          *8.*     *Lundgren Secured 8 Class Treatment*

21      This class is impaired. Debtor will pay $ 47,289.60 as follows: interest only at the rate of

22 6% per annum with the balance due upon the sale or disposition of the Metolius Project. The

1  monthly payment is $ 236.45. The first payment is due March 1, 2016. The claim holder will

2  retain his interest in the collateral until paid in full.

3      *9.*  *Disputed 9 Class Treatment*

4    This class is impaired. Holders of claims in this class will receive nothing under the Plan.

5      *10.*  *Wells Fargo 10 Class Treatment*

6    This class is unimpaired. Debtor will cause the Pet Cemetery business to pay this claim as

7  per the prepetition agreement. The claim holder's rights are not altered by the Plan.

8

9  **B.**  **Treatment of Equity Interests**

10    There are no equity interests in this case. Property of the bankruptcy estate will vest in

11  Debtor on the Effective Date.

12  **V.**  **ALLOWANCE AND DISALLOWANCE OF CLAIMS**

13  **A.**  **Disputed Claim.**

14    A disputed claim is a claim that has not been allowed or disallowed, and as to which

15  either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in

16  interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has

17  scheduled such claim as disputed, contingent, or unliquidated.

18      *1.*  *Delay of Distribution on a Disputed Claim.*

19    No distribution will be made on account of a disputed claim unless such claim is allowed.

20      *2.*  *Settlement of Disputed Claims.*

21    The Debtor will have the power and authority to settle and compromise a disputed claim

22  with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy

23  Procedure.

1   **VI.   PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

2           Debtor will assume the executory contract with Anne S. Lane relating to the purchase by

3   Debtor of shares of San Diego Pet Memorial Park, Inc. Debtor will cure the prepetition default

4   by causing the Pet Cemetery Business to pay Anne S. Lane $ 65,000 with interest at 6% interest

5   amortized over 24 months. The monthly payment is $ 2,880.84. The first payment will be due

6   March 1, 2015. Ms. Lane will retain her collateral in the shares of the Pet Cemetery Business.

7   Debtor will perform all pre-confirmation and post-confirmation obligations under that executory

8   contract. If Debtor does not perform his obligations, Anne S. Lane may exercise any legal

9   remedies which she has under the agreement between her and Debtor with respect to the Pet

10   Cemetery Business.

11           Other than as stated above, to Debtor's knowledge, there are no unexpired leases or

12   executory contracts. If any exist, they are deemed rejected. Claims arising from rejection of

13   executory contracts or unexpired leases will be part of the *General Unsecured 1* class. Each

14   entity that is a party to an executory contract or unexpired lease rejected pursuant to this Plan

15   shall be entitled to file a proof of claim for damages alleged to arise from such rejection not later

16   than the deadline set to object to confirmation of the Plan.

17   **VII.   MEANS FOR IMPLEMENTATION OF THE PLAN**

18           The Plan will be implemented through sale or refinance of the Residence, Debtor's

19   earnings, and recovery of money through pursuit of Debtor's claims. Debtor will use his earnings

20   and money obtained through sale or legal actions to make payments as required under the Plan.

21   Debtor will have authority to sell or refinance the Residence without prior approval from the

22   Court. The title company handling the sale or refinance will not be required to have any separate

23   court order.

DEBTOR'S PLAN OF REORGANIZATION DATED
NOVEMBER 23, 2015

**EXHIBIT A**

1 **VIII.  GENERAL PROVISIONS**

2       **A.**      **Effective Date of Plan.**

3       The effective date of this Plan is the fifteenth day following the date of the entry of the

4 order of confirmation.

5       **B.**      **Severability.**

6       If any provision in this Plan is determined to be unenforceable, the determination will in

7 no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8       **C.**      **Binding Effect.**

9       The rights and obligations of any entity named or referred to in this Plan will be binding

10 upon, and will inure to the benefit of the successors or assigns of such entity.

11       **D.**      **Captions.**

12       The headings contained in this Plan are for convenience of reference only and do not

13 affect the meaning or interpretation of this Plan.

14       **E.**      **Controlling Effect.**

15       Unless a rule of law or procedure is supplied by federal law (including the Code or the

16 Federal Rules of Bankruptcy Procedure), the laws of the State of Oregon govern this Plan and

17 any agreements, documents, and instruments executed in connection with this Plan, except as

18 otherwise provided in this Plan.

19       **F.**      **Notices.**

20       Any notice to the Debtor must be in writing, and will be deemed to have been given three

21 days after the date sent by first-class mail, postage prepaid and addressed as follows:

      John C. Sanborn               Anthony V. Albertazzi
      298 NW Linster Place         Albertazzi Law Firm
      Bend OR 97701               300 SW Columbia St. Ste. 203
                                    Bend, OR 97702

DEBTOR'S PLAN OF REORGANIZATION DATED NOVEMBER 23, 2015

**EXHIBIT A**

1       **G.**     **Causes of Action.**

2       Debtor retains all causes of action that it has against any party, whether arising pre- or

3 post-petition, and all such causes of action vest in the reorganized Debtor on the Effective Date.

4 The nondisclosure of unknown causes of action is not a settlement, compromise, waiver or

5 release of such cause of action, and does not judicially estop the Debtor from asserting any such

6 cause of action as a claim or defense. Confirmation of the Plan does not constitute a settlement,

7 compromise, waiver, or release of any cause of action unless the Plan or Confirmation Order

8 specifically and unambiguously so provide.

9       Debtor shall have authority to pursue all causes of action against others in Debtor's

10 individual name. After confirmation of the Plan, no bankruptcy court approval is needed for

11 appointment or compensation of professionals relating to these actions. Debtor will have sole

12 authority to settle or abandon claims against others.

13       **H.**     **Post-Confirmation Compensation of Professional Persons.**

14       Compensation for services rendered and for reimbursement of expenses by a professional

15 person after the Effective Date need not be approved by the Bankruptcy Court. Professional

16 persons may invoice the reorganized Debtor (or other responsible third-party) directly, and the

17 reorganized Debtor (or other responsible third-party) may pay such invoices without further

18 order from the Bankruptcy Court.

19 **IX.**     **REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN**

20       **A.**     **Creditor Action Restrained.**

21       The confirmed Plan is binding on every creditor whose claims are provided for in the

22 Plan. Therefore, even though the automatic stay terminates on the Effective Date with respect to

secured claims, no creditor may take any action to enforce either the pre-confirmation obligation

or the obligation due under the Plan, so long as Debtor is not in material default under the Plan.

**B.    Obligations to Each Class Separate.**

Debtor's obligations under the Plan are separate with respect to each class of creditors.

Default in performance of an obligation due to members of one class shall not by itself constitute

a default with respect to members of other classes. For purposes of this section, the holders of all

administrative claims shall be considered to be a single class, the holders of all priority claims

shall be considered to be a single class, and each non-debtor party to an assumed executory

contract or lease shall be considered to be a separate class.

**C.    Material Default Defined.**

If Debtor fails to make any payment, or to perform any other obligation required under

the Plan, for more than 14 days after the time specified in the Plan for such payment or other

performance, any member of a class affected by the default, party-in-interest, or United States

Trustee may file and serve upon Debtor and Debtor's attorney (if any) a written notice of

Debtor's default and request for entry of an order declaring default. If Debtor fails within 14

days after the date of service of the notice of default either: (i) to cure the default; (ii) to file and

serve a motion for an extension of time to cure the default; or (iii) to file and serve a motion for a

determination that no default occurred, then Debtor is in Material Default under the Plan to all

the members of the affected class. If Debtor is in Material Default under the Plan, the

complaining creditor may then submit its order declaring Material Default. The provisions of this

paragraph do not preclude the United States Trustee from otherwise seeking an order to dismiss

or convert the case for cause.

DEBTOR'S PLAN OF REORGANIZATION DATED
NOVEMBER 23, 2015                                    **EXHIBIT A**

16823-13773:96530

1      **D.**     **Remedies Upon Material Default.**

2      Upon Material Default, any member of a class affected by the default: (i) may file and

3 serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further

4 order of the Bankruptcy Court, and may pursue its lawful state court remedies to enforce and

5 collect Debtor's obligations under the Plan.

6      **E.**     **Effect of Conversion to Chapter 7.**

7      If the case is at any time converted to one under Chapter 7, property of the Debtor shall

8 vest in the Chapter 7 bankruptcy estate to the same extent provided for in 11 U.S.C. § 348(f)

9 upon the conversion of a case from Chapter 13 to Chapter 7.

10      **F.**     **Retention of Jurisdiction.**

11      The Bankruptcy Court retains jurisdiction to the maximum extent possible over

12 proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii)

13 whether the time for performing any Plan obligation should be extended or modified; (iii)

14 adversary proceedings and contested matters pending as of the Effective Date or specifically

15 contemplated in this Plan to be filed in this Court; (iv) whether the case should be dismissed or

16 converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of

17 controversies under Fed. R. Bankr. Proc. 9019; (vii) compensation of professionals; and (viii)

18 other questions regarding the interpretation and enforcement of the Plan.

19 **X.**     **DISCHARGE AND OTHER EFFECTS OF CONFIRMATION**

20      **A.**     **Discharge**

21      Confirmation of this Plan does not discharge any debt provided for in this Plan until the

22 Court grants a discharge on completion of all payments under this Plan, or as otherwise provided

23 in § 1141(d)(5) of the Code, or in the event the Court grants a hardship discharge. The Debtor

16823-13773:96530

Case 15-33749-tmb11    Doc 75    Filed 11/23/15

1 will not be discharged from any debt excepted from discharge under § 523 of the Code, except as

2 provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure. The final payment

3 under the Plan is approximately 60 months after the Effective Date. Debtor will apply for a

4 discharge after the distributions to be made under the Plan to the *General Unsecured 1* class.

5 Discharge is subject to approval by the Court.

6 **B.    Vesting of Property.**

7       On the Effective Date, all property of the estate and interests of the Debtor will vest in the

8 reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims

9 and interests except as provided in this Plan, subject to revesting upon conversion to Chapter 7 if

10 such conversion takes place.

11 **C.    Plan Creates New Obligations.**

12       The obligations to creditors that Debtor undertakes in the confirmed Plan replace those

13 obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations

14 under the confirmed Plan constitute binding contractual promises that, if not satisfied through

15 performance of the Plan, create a basis for an action for breach of contract under state law. To

16 the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such

17 lien under applicable non-Bankruptcy law.

18 Respectfully submitted,

By:    /s/ John Charles Sanborn               11/23/15
       John Charles Sanborn                   Date


By:    /s/ Anthony V. Albertazzi              11/23/15
       Anthony V. Albertazzi, OSB #96003 Date
       Attorney for Debtor / Plan Proponent

16823-13773:96530

**Identity and Value of Material Assets of Debtor**

| Property Description | | Value |
|---|---|---|
| Residence | $ | 1,542,000.00 |
| Pet Cemetery Property | $ | 750,000.00 |
| Bank Accounts | $ | 120,000.00 |
| Shares in Pet Cemetery Business | $ | 40,000.00 |
| | | |
| Michigan Apartments Partnership Interest | $ | 95,037.00 |
| Shares in Metolius Project | $ | 47,000.00 |
| Claims against others - uknown | $ | - |
| | $ | - |
| | $ | - |
| Total | $ | 2,594,037.00 |

| Notes |
|---|
| Residence value based upon prepetition appraisal; There are four lots which can be sold separately |
| |
| Values are approximate; value of claims against others is unliquidated and unknown |

Exhibit B

**PREPETITION FINANCIAL STATEMENT**

John Charles Sanborn

| ASSETS | | |
|---|---|---|
| Real Property | $ | 3,887,000 |
| Personal Property | $ | 156,325 |
| TOTAL ASSETS | $ | 4,043,325 |
| **LIABILITIES** | | |
| Secured Debt | $ | (1,609,716) |
| Unsecured Debt | $ | (697,152) |
| TOTAL LIABILITIES | $ | (2,306,868) |

**NET WORTH**        $     **1,736,457**

EXHIBIT C

**Summary of Postpetition Operating Reports (Case Filed August 3, 2015)**

| Month (2015) | Receipts | Disbursements | Net |
|---|---:|---:|---:|
| Beginning Cash Balance | | | $2,141.00 |
| August | $3,479.00 | ($2,818.00) | $661.00 |
| September | $8,738.00 | ($1,715.00) | $7,023.00 |
| October | $5,115.00 | ($4,981.00) | $134.00 |
| Total: | $17,332.00 | ($9,514.00) | $9,959.00 |

| Notes |
|---|
| *Past performance does not guarantee future results. These figures have not been audited by an outside CPA or auditor.* |

Exhibit D

## Liquidation Analysis

| Property Description | Value | | Debt | | Equity | | Exemption Amount | | Available for Liquidation |
|---|---|---|---|---|---|---|---|---|---|
| other | $ | - | $ | - | $ | - | $ | - | $ | - |
| other | $ | - | $ | - | $ | - | $ | - | $ | - |
| other | $ | - | $ | - | $ | - | $ | - | $ | - |
| **Totals** | **$** | **-** | **$** | **-** | **$** | **-** | | **-** | **$** | **-** |

| Net Liquidation Value in Chapter 7 | $ | - |
|---|---|---|

| Notes |
|---|
| Creditors would receive 100% in a hypothetical chapter 7 liquidation. |
| This is a 100% payment plan. The Debtor is solvent. See disclosure statement for details. |

Exhibit E

## INCOME AND EXPENSE PROJECTIONS

| Description | | Amount |
|---|---|---|
| Pet Cemetery Rents | $ | 8,000 |
| Miscellaneous Rents | $ | 1,200 |
| Living Expenses | $ | (3,500) |
| J2 Mill View Payment | $ | (1,982) |
| Shane Lundgren Payment | $ | (236) |
| Anticipated Taxes | $ | (1,500) |
| **Monthly Net Income** | **$** | **1,982** |

---

Notes

Obligations to Anne S. Lane, Wells Fargo and Strategic Funding are paid by Pet Cemetery Business and are not listed here.

---

EXHIBIT F

## Ability to Fund Plan

Line *Projections are based on Effective Date of February 15, 2015*

| Line | | | |
|------|---|---|---|
| 1 | Projected balance in DIP Account at Confirmation | $ | 120,000.00 |
| 2 | UST Fees | $ | (6,500.00) |
| 3 | Convenience Class Payout | $ | (506.54) |
| 4 | Professional Fees - CPA | $ | (2,500.00) |
| 5 | Albertazzi Law Firm Initial Payment | $ | (5,000.00) |
| 6 | Anne S. Lane Payment | $ | (66,002.86) |
| 7 | Michigan Apartment Partnership Sale Proceeds | $ | 38,373.50 |
| 8 | Michigan Apartment Parnership Interest Due | $ | 56,663.92 |
| 9 | Additional accumulations in DIP Account | $ | 3,000.00 |
| 10 | Debra Kyser Priority Claim | $ | (10,000.00) |
| 11 | Payment to Unsecured Creditors | $ | (100,000.00) |
| 12 | other | $ | - |
| 13 | **Funds On Hand after Plan Funding** | **$** | **27,528.02** |

**Notes**

Line 2: UST fees will be due 12/31/15 and will be paid before Effective Date as appropriate

Line 3: CPA fees are not yet incurred, but are expected to be incurred prior to confirmation of the Plan.

Line 7, 8: Balance includes expected proceeds from sale of Michigan Apartments Partnership property and interest due on a note payable to Debtor by the partnership.

Line 13: funds will be needed to pursue legal actions and for enhancing value of Residence by obtaining permits and development approvals.

EXHIBIT G